UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| April L.M.L., | Case No. 2:23-cv-01758-DJA |
| Plaintiff, | |
| v. | Order |
| Martin O'Malley[1], Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff April L.M.L.'s brief moving for reversal and remand for further proceedings (ECF No. 11) and the Commissioner's cross motion to affirm (ECF No. 13). Plaintiff filed a reply. (ECF No. 15). Because the Court finds the administrative law judge ("ALJ") did not err in assessing the residual functional capacity ("RFC"), discounting Plaintiff's subjective complaints, or not resolving a purported conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"), the Court denies Plaintiff's motion (ECF No. 11) and grants the Commissioner's cross motion (ECF No. 13). The Court finds these matters properly resolved without a hearing. LR 78-1.

## BACKGROUND

**I.    Procedural history.**

Plaintiff filed an application for a period of disability and disability insurance benefits on June 17, 2020. (ECF No. 11 at 3). The Commissioner denied the claim by initial determination on January 4, 2021, and on reconsideration on September 24, 2021. (*Id.*). Plaintiff requested a hearing before an ALJ on November 24, 2021. (*Id.*). The ALJ published an unfavorable decision on January 3, 2023. (*Id.*). Plaintiff requested that the Appeals Council review the ALJ's decision

---

[1] Martin O'Malley is now the Commissioner of Social Security and substituted as a party.

on January 20, 2023. (*Id.*). The Appeals Council denied the request for review on September 15, 2023 and on that date, the ALJ's decision became the final decision of the Commissioner. (*Id.*).

**II.  The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. 404.1520(a). (AR 15-35). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, July 26, 2021. (AR 18). At step two, the ALJ found that Plaintiff has the following severe impairments:

> Epilepsy, Major Depressive Disorder, Bipolar I Disorder, Generalized Anxiety Disorder (GAD), Borderline Personality Disorder, Impulse Control Disorder, Post-Traumatic Stress Disorder (PTSD), Right Knee Degenerative Joint Disease, Bilateral Hand Osteoarthritis, Bilateral Upper Extremity Neuropathy, Obesity, Right Upper Extremity Carpal Tunnel Syndrome, Right Upper Extremity Tendinitis[,] and Somatic Symptom Disorder.

(AR 18-19).

At step three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19-21). In making this finding, the ALJ considered Listings 1.18, 11.02, 11.14, 12.02, 12.07, 12.15. (AR 19-21).

At step four, the ALJ found that Plaintiff,

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with additional limitations. Specifically, she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk up to 6 hours of an 8 hour day; sit up to 6 hours of an 8 hour day; occasionally climb ramps or stairs, but never climb ladders, ropes[,] or scaffolds due to epilepsy; occasionally balance, stoop[,] and kneel, but never crawl due to obesity; frequently handle and finger with the bilateral upper extremities due to tendinitis, carpal tunnel syndrome and osteoarthritis with neuropathy in both hands; she should avoid concentrated exposure to temperature extremes and humidity, and can have no exposure to unprotected heights or dangerous moving machinery due to epilepsy. Despite mental impairment, the claimant is able to understand, carry out, and remember simple work instructions, use judgment to make simple work-related decisions, adapt to occasional change in a routine work setting, maintain concentration, persistence[,] and pace over a two-hour period, an

>eight-hour workday[,] and a 40-hour workweek, to perform simple work tasks with occasional interaction with all others in the workplace to include supervisors, co-workers[,] and members of the general public.

(AR 22).

At step five, the ALJ found that transferability of job skills is "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (AR 34). The ALJ found that Plaintiff could perform occupations such as marker, routing clerk, and order caller. (AR 34). Accordingly, the ALJ found that Plaintiff had not been disabled since July 3, 2015[2] through the date of decision. (AR 35).

## **STANDARD**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the

---

[2] The ALJ cited Plaintiff's original date of disability—July 3, 2015—instead of the amended date on July 26, 2021. *Compare* (AR 15) *with* (AR 35).

Page 3 of 17

Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## **DISABILITY EVALUATION PROCESS**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a

determination will be made, and no further evaluation is required.  *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit.  *Id*. § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities.  *Id.* § 404.1520(c).  An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the

relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

## ANALYSIS AND FINDINGS

**I.  Whether the ALJ's RFC is supported by substantial evidence.**

    *A.  The parties' arguments.*

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because the ALJ relied on stale medical opinions that later medical records contradicted. (ECF No. 11 at 5-8). She explains that the ALJ found Dr. Kamal's opinion—based on his December 8, 2020

consultative examination—that Plaintiff could engage in a range of light work, to be partially persuasive. (*Id.*). The ALJ found state agency physicians Dr. Han and Dr. Bui's opinions—after their review of the record on August 24, 2021 and December 31, 2021, respectively—that Plaintiff could perform medium work, to be less persuasive. (*Id.*). Using these opinions, the ALJ opined that Plaintiff could engage in light work and "rejected a need for an assistive device because Dr. Kamal noted in December 2020 that [Plaintiff] ambulated within normal limits without an assistive device." (*Id.*). But, in April of 2022, Plaintiff presented to Dr. Ashman with knee pain. (*Id.*). Dr. Ashman noted that a cane or walker would be appropriate to decrease force when weightbearing on Plaintiff's affected knee. (*Id.*). Plaintiff argues that the ALJ erred in failing to consider this more-recent opinion which could impact the RFC because "[t]he use of an assistive device would impact an individual's ability to engage in the prolonged weightbearing required of light work…[and]…may also impact [Plaintiff's] ability to lift 20 pounds occasionally and 10 pounds frequently." (*Id.*). Because the ALJ did not present a hypothetical including a cane to the vocational expert, Plaintiff asserts that the error was not harmless. (*Id.*).

The Commissioner responds that the ALJ's RFC is supported by substantial evidence because the ALJ appropriately relied on Drs. Kamal, Han, and Bui's opinions and because Dr. Ashman's examination did not include any medical opinion. (ECF No. 13 at 4-8). The Commissioner adds that Drs. Kamal, Han, and Bui's opinions are not stale because there is always some lapse between a consultant's report and the ALJ hearing. (*Id.*). Additionally, other parts of the record indicate that Plaintiff neither required nor used a cane, including records after Plaintiff's April 2022 appointment with Dr. Ashman. (*Id.*). Specifically, in August 2022, Dr. Ashman noted that Plaintiff "denies use of an assistive device" and that her gait was "normal." (*Id.*). And in October of 2022, a treatment note described Plaintiff's "steady" gait, "normal" heel and toe walking, and normal tandem gait when Plaintiff closed one eye. (*Id.*). As a result, the Commissioner argues that the ALJ did not err and that the ALJ proposed appropriate questions to the vocational expert. (*Id.*).

Plaintiff replies that the Commissioner is inappropriately applying post-hoc rationalizations to the ALJ's decision by citing to other portions of the record to which the ALJ

did not himself cite. (ECF No. 15 at 4-5). Plaintiff argues that, even if the Court were to consider these citations, the fact that her gait appeared normal on certain instances does not detract from Dr. Ashman's opinion that a cane would be appropriate for her. (*Id.*).

### B. Analysis.

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Miller v. Kijakazi*, No. 2:22-CV-00355-EJY, 2023 WL 1525429, at *6–7 (D. Nev. Feb. 3, 2023).

The regulations provide that the ALJ must assess all the evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3). "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). While the ALJ is responsible for determining the RFC, the RFC must be supported by substantial evidence. "The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (citation omitted). Moreover, "the ALJ must use 'some medical evidence of the claimant's ability to function in the workplace' in order to make a proper RFC assessment; '[t]he ALJ may not simply draw his own inferences about [the claimant's] functional ability from medical reports.'" *Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017), and citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)); *see also* POMS § DI 24510.001(A)(1) ("The RFC assessment [] is based primarily on medical evidence"). Courts in other circuits have held that when an ALJ rejects the expert opinions in the record and instead

relies on his own judgment in determining a claimant's RFC, the ALJ's decision is unsupported by substantial evidence. *See Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648, at *2-3 (D. Nev. Mar. 9, 2023) (compiling cases).

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

Here, the ALJ's RFC is supported by substantial evidence. While Plaintiff has pointed to evidence of a doctor recommending a cane, Plaintiff's argument is essentially that the evidence could support more than one rational interpretation. So, the Court must defer to the Commissioner's determination. While Dr. Ashman explained to Plaintiff "that a cane or walker would be appropriate to decrease force when weightbearing on the affected joint," as the Commissioner points out, later records demonstrate that Plaintiff did not heed that advice. *Compare* (AR 1167-68) *with* (AR 1792) (showing that Plaintiff denied use of an assistive device and presented with a normal gait on August 30, 2022, four months after seeing Dr. Ashman). The Court cannot find that the ALJ erred on the basis of this single medical record. This is particularly true because the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC and the ALJ is responsible for resolving conflicts and ambiguity in the evidence. The Court denies Plaintiff's motion to remand on this ground.

**II.    Whether the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's subjective complaints.**

   ***A.    The parties' arguments.***

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's subjective complaints because the ALJ did not draw a connection between Plaintiff's activities of daily living and work and simply summarized other pieces of medical evidence without explaining why they undermined Plaintiff's testimony. (ECF No. 11 at 8-12). Plaintiff adds that the ALJ's identification of differing medical opinions in the record did not and could not constitute a reason for finding Plaintiff's testimony uncredible. (*Id.*). Ultimately, Plaintiff argues, the ALJ's discussion amounts to the ALJ concluding that objective findings did not support Plaintiff's complaints. (*Id.*). Because the lack of objective medical evidence supporting the degree of limitation cannot form the sole basis for discounting pain testimony, Plaintiff argues that the ALJ erred. (*Id.*).

The Commissioner responds that the ALJ properly discounted Plaintiff's pain testimony by relying on Plaintiff's activities of daily living, the medical evidence, and Dr. Kamal's consultative examination. (ECF No. 13 at 8-11). The Commissioner points out that Plaintiff's activities of doing caregiver tasks for an ex-spouse, shopping, cooking, cleaning, caring for pets, driving, and sitting at her current job for six hours with just one ten-minute break all contradict the testimony that she has difficulty standing and sitting for prolonged periods and lifting and carrying more than ten pounds. (*Id.*). The Commissioner points out that the pieces of medical evidence on which the ALJ relied are also inconsistent with Plaintiff's complaints of debilitating knee pain and neuropathic pain in her hands and feet. (*Id.*). Finally, the Commissioner points out that the ALJ properly relied on Dr. Kamal's opinion that Plaintiff could perform light work as a reason to discount Plaintiff's allegations. (*Id.*).

Plaintiff replies and reiterates that the ALJ improperly relied on her activities of daily living and that just because she was capable of doing some work—which is encouraged by the law—does not mean that she is not disabled. (ECF No. 15 at 5-7). She adds that the ALJ's reliance on Dr. Kamal's opinion was improper because "no reasonable inference about

[Plaintiff's] complaints can be drawn from the opinion of a one-time consultative examination." (*Id.*).

### B. Analysis.

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible. 42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional findings). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," the agency must explain its reasoning. *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Treichler*, 775 F.3d 1090, 1101 (9th Cir. 2014). The Ninth Circuit thus requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (citing *Bunnell*, 947 F.2d at 346 and *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). That means "[g]eneral findings are insufficient." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (superseded on other grounds); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

An ALJ must specifically identify the testimony he finds not credible and why. *Treichler*, 775 F.3d at 1102-1103. "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id.* (internal quotations omitted). "Although the ALJ's analysis need

not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Id.*

Here, the Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's testimony. Contrary to Plaintiff's assertion that the ALJ did not tie her activities of daily living to skills transferrable to work, the ALJ explained how Plaintiff's activities of daily living contradicted her testimony and transferred to work skills. For example, the ALJ explained that, although Plaintiff "alleged being able to sustain concentration for 6 minutes," she also "testified that she currently works 29 hours per week at six hour shifts with only a single ten minute break assembling components for spacecraft." (AR 23). Additionally, the ALJ explained that Plaintiff's caretaker activities were part of her job as a personal care assistant for her ex-spouse and that the job entailed sixteen hours per week of work including "doing shopping, cleaning[,] and taking him to appointments." (AR 23). While Plaintiff correctly points out that the Social Security Act permits claimants to test their work capacity with a trial work period, she does not provide any authority to support the assertion that the ALJ could not consider her work as being inconsistent with her allegations of debilitating symptoms. And she also raised this argument for the first time in reply instead of in her opening brief.

The Court also does not find that the ALJ simply listed the medical evidence instead of demonstrating how that evidence undermined portions of Plaintiff's testimony. For example, the ALJ noted that, although Plaintiff alleged "crippling" pain in her hands and feet and "bilateral foot, knee[,] and hand pain, physical examinations did not show any significant joint abnormality." (AR 32). The ALJ also noted that "[a] treating source, Dr Larkin[,] noted 'questionable' zoning out, daydreams[,] and noted 'unknown if seizure occurs.'" (AR 32). The ALJ also concluded that "[t]he claimant's activities of daily living…, which include caring for an ex-spouse, doing caregiver tasks including shopping, cooking[,] and cleaning, caring for a pet, and working part-time are inconsistent with the claimant's more dire pain complaints and reports of functional and mental debility." (AR 32). The Court finds that the ALJ sufficiently demonstrated how certain medical evidence undermined portions of Plaintiff's testimony.

Finally, while Plaintiff is correct that lack of objective findings is not sufficient to discount a claimant's testimony, the Court has already found that the ALJ properly relied on Plaintiff's activities of daily living (caring for her ex-spouse, caring for pets, cleaning, shopping), work record (as an assembler and caregiver), and inconsistencies between Plaintiff's testimony and her conduct (stating that she could not concentrate for longer than six minutes but working twenty-nine hours per week with only ten minute breaks, amongst other things). This was along with evidence from physicians and third parties. This included doctors who noted that Plaintiff's "zoning out" was "questionable," and that "[e]ven though [Plaintiff] may appear to be relatively healthy to other observers she is likely to see herself as having a history of complex medical problems." (AR 27, 32). This also included the ALJ's notes that "[s]he alleges multiple symptoms due to absence seizures but the record does not support that seizure activity is persistent or that it is attended with the symptoms to the extent alleged." (AR 32). Ultimately, the Court finds that the ALJ articulated clear and convincing reasons for rejecting Plaintiff's pain and limitation testimony and declines to remand on this ground.

**III.    Whether the ALJ erred in not resolving a conflict between the DOT and the vocational witness' testimony.**

   *A.    The parties' arguments.*

Plaintiff argues that the ALJ erred by failing to resolve a conflict with her mental impairments—specifically, her RFC limitation to be able to adapt to occasional change in a routine work setting—with the jobs the vocational expert testified that Plaintiff could perform. (ECF No. 11 at 12-14). Plaintiff explains that the jobs about which the VE testified—marker, routing clerk, and order caller—all require Reasoning Level 2 under the DOT. (*Id.*). But Reasoning Level 2 requires a person to "[d]eal with problems involving a few concrete variable in or from standardized situations," which Plaintiff claims is inconsistent with occasional changes in a routine work setting. (*Id.*). Instead, Plaintiff asserts that occasional changes in a routine work setting correspond with Reasoning Level 1, which jobs require workers to "[d]eal with standardized situations with occasional or no variable in or from these situations encountered on the job." (*Id.*). Plaintiff argues that the ALJ erred by failing to ask the VE how a person limited

to "occasional" changes in the work setting could tolerate the "few" changes required by the jobs they discussed. (*Id.*).

The Commissioner responds and argues that there was no "apparent" conflict between the jobs and Plaintiff's limitations such that the ALJ was required to resolve it. (ECF No. 13 at 11-15). The Commissioner points out that, for a conflict to be substantial enough for the ALJ to resolve it, the conflict must be apparent or obvious. (*Id.*) (citing *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016)). The Commissioner asserts that, for a conflict to be apparent or obvious, it would have to be at odds with the DOT's "listing of job requirements that are essential, integral, or expected." (*Id.*) (quoting *Guiterrez*, 844 F.3d at 807-08). The Commissioner asserts that Plaintiff's limitation to occasional change in a routine work setting is consistent—not inconsistent—with the Reasoning Level 2 requirements of dealing with a few concrete variables. (*Id.*). The Commissioner adds that the Ninth Circuit issued an unpublished decision finding in the Commissioner's favor on a similar issue and that this Court did as well. (*Id.*) (citing *Padilla v. Saul*, 852 F.App'x 277, 279 (9th Cir. 2021) and *Jennifer L. v. Kijakazi*, No. 2:22-cv-01702-BNW at ECF No. 25 (D. Nev. 2022)).

Plaintiff replies and reiterates that her limitations are consistent with Reasoning Level 1, not Reasoning Level 2. (ECF No. 15 at 7-10). She adds that the cases on which the Commissioner relies do not support his conclusion and are distinguishable from the instant case. (*Id.*). Plaintiff reiterates that the ALJ failed to resolve the conflict with the DOT and thus erred. (*Id.*).

### B.     Analysis.

Social Security Ruling 00-4p requires the ALJ to inquire, on the record, as to whether there is consistency between the VE testimony and the DOT. The DOT is a "resource compiled by the Department of Labor that details the specific requirements for different occupations." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). The DOT "refers to 'occupations,' not to specific jobs. 'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" *Id*. (quoting SSR 00-4p). The ALJ may rely on the VE's testimony "even if it is inconsistent with the job

descriptions set forth in the Dictionary." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (internal quotations and citations omitted). However, if there is an apparent conflict between the VE's testimony and the DOT, the ALJ must determine whether the VE's explanation of why the Plaintiff can still perform a certain occupation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT. SSR 00-4p; *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is *required* to reconcile this inconsistency") (emphasis in original); *see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) ("The ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT."). If the ALJ does not pursue this line of inquiry to reconcile discrepancies between a VE's testimony and the DOT, the Court cannot determine whether substantial evidence supports the ALJ's step-five findings relating to whether the plaintiff can perform jobs that exist in significant numbers in the national economy. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007). The ALJ therefore errs where there is no explanation for the conflict in the record. *See id*. at 1154 n.19; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (superseded on other grounds).

Here, Plaintiff has failed to establish that there is an "obvious or apparent" conflict between her limitation to only "occasional change in a routine work setting" and the essential, integral, or expected job requirements of a marker, routing clerk, or order caller. The Dictionary defines the requirements of a marker, routing clerk, and order caller, respectively as follows:

> Marker:
>
> Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. [M]ay record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to

> verify accuracy and notify supervisor of discrepancies. [M]ay print information on tickets, using ticket-printing machine

DOT 209.587-034 (marker).

Routing Clerk:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. [M]ay be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.).

DOT 222.687-022 (routing clerk).

Order Caller:

> Reads items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available. May read items to CHECKER (clerical) I who examines articles prior to shipping. May be designated by kind of data called out to other worker as Weight Caller (clerical); Yardage Caller (textile).

DOT 209.667-014 (order caller).

Plaintiff did not explain how her limitation to occasional change conflicted with any of the job requirements, nor how such conflicts were likely or foreseeable. And the Court does not find there to be an apparent conflict with the job requirements. As such, the ALJ did not err when he found no conflict between the VE's testimony that Plaintiff could perform such jobs and the DOT.

And regardless of the ALJ's duty to reconcile such a conflict, courts within the Ninth Circuit have found RFC limitations similar to Plaintiff's to be consistent with Reasoning Level 2. *See*, *e.g.*, *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (recognizing that the Ninth Circuit, along with sister circuits, concluded that an RFC limitation to "simple" tasks is consistent with Level 2 Reasoning); *Delatorre v. Colvin*, No. 6:12-cv-01911-AA, 2013 WL 6284389, at *6 (D. Or. Dec. 3, 2013) (finding that "reasoning level 2 is generally

consistent with the ability to perform simple, routine tasks"); *Swain v. Colvin*, No. 3:14-CV-01960-AA, 2015 WL 13237229, at *6 (D. Or. Dec. 11, 2015) (same); *Reyes v. Comm'r of Soc. Sec.*, No. 1:17-CV0340-BAM, 2018 WL 4204787, at *7 (E.D. Cal. Sept. 4, 2018) (finding no conflict with Level 2 Reasoning and a limitation of a "work environment with no more than occasional changes in routine"); *Bement v. Astrue*, No. C11-814-TSZ-JPD, 2011 WL 7039958, at *13 (W.D. Wash. Dec. 28, 2011) (noting that an RFC limitation of "simple workplace decisions with few workplace changes" is more consistent with Level 2 Reasoning than Level 3); *Kelly P. v. Saul*, No. 5:18-CV00777-MAA, 2019 WL 3573591, at *5 (C.D. Cal. Aug. 6, 2019) (finding that a job requiring Reasoning Level 2 did not raise an obvious or apparent conflict with a limitation to "only minimal changes in the workplace setting or routine"); *S. v. Kijakazi*, No. 5:21-CV-00436-AFM, 2022 WL 5238147, at *4 (C.D. Cal. Aug. 31, 2022) (holding that a job requiring an ability to deal with a "few concrete variables" did not raise an obvious or apparent conflict with a limitation to "few workplace changes"); *Padilla v. Saul*, 852 F. App'x 277, 279 (9th Cir. 2021) (unpublished) (finding no obvious or apparent conflict between a limitation to "only occasional changes to the essential job functions" and Reasoning Level 2).  Because the Court does not find that the ALJ was obligated to resolve an obvious or apparent conflict, the Court declines to remand on this ground.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and/or remand (ECF No. 11) is **denied.**

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 13) is **granted**.  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: September 5, 2024

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE